IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE BALLOT TITLE APPEAL OF CITY OF SEATTLE INITIATIVES 107-110,<br><br>and<br><br>IN THE MATTER OF THE BALLOT TITLE APPEAL OF CITY OF SEATTLE PROPOSITION NO. 1B (ORDINANCE 124509),<br><br>and<br><br>YES FOR EARLY SUCCESS, a non-profit corporation, LAURA CHANDLER, and BARBARA FLYE,<br><br>Appellants,<br><br>v.<br><br>CITY OF SEATTLE and KING COUNTY,<br><br>Respondents. | No. 72322-7-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: September 2, 2014 |

BECKER, J. — Yes For Early Success and Seattle voters Laura Chandler and Barbara Flye (collectively Yes For Early Success) appeal the trial court's August 15, 2014 order directing that the City of Seattle and King County use a joint ballot title for two alternative measures concerning early childhood education.

Although Yes For Early Success designated its initiating document as a notice for discretionary review, it concedes that the challenged order "disposes of every appealable matter in the three consolidated cases, reserving . . . only a statutory appeal of the ballot title for Ordinance 124509." We conclude that the challenged trial court order is a "Decision Determining Action" and therefore appealable under RAP 2.2(a)(3). See also RAP 5.1(c) (appellate court will treat notice for discretionary review of appealable order as a notice of appeal). Yes For Early Success has acknowledged that it has had a sufficient opportunity to submit briefing addressing the merits of an appeal.

We agree with the trial court that RCW 29A.36.050(3) specifies the mandatory ballot title for the measures under the circumstances present here and controls over any conflicting provisions of the Seattle City Charter. Yes For Early Success's remaining claims do not establish reversible error. We therefore affirm.

FACTS

In March 2014, Yes For Early Success filed a petition for City of Seattle Initiative Measure Number 107 (I-107), "An Act relating to early learning and child care." Among other things, the initiative would establish a $15 minimum wage for child care teachers and staff, establish a City policy limiting child care costs to no more than 10 percent of income, prohibit violent felons from providing professional child care, and require enhanced training for child care teachers and staff. Sponsors eventually submitted sufficient signatures to present I-107 to the Seattle City Council in accordance with the City Charter.

2

Following a session on June 23, 2014, including public comment, the Council rejected I-107 and adopted Seattle Ordinance 124509, submitting to voters what the Council referred to as an "alternative measure dealing with the same subject." Ordinance 124509 proposed a preschool plan that addressed, among other things, early learning funding, teacher compensation, teacher certification and training, affordability, and an oversight committee.

The City Charter does not provide for initiatives directly to the people. All initiatives must be presented first to the Council. Seattle City Charter, Article IV, Section 1B. Under Article IV, Section 1C of the City Charter, the Council

> may enact, or reject, any initiative bill or measure, but shall not amend or modify the same. It may, however, after rejection of any initiative bill or measure, propose and pass a different one dealing with the same subject.

If the Council has rejected an initiative measure and passed a different measure dealing with the same subject,

> it shall be submitted at the same election with the initiative measure and the vote of the qualified electors also taken for and against the same, and if both such measures be approved by a majority vote, if they be conflicting in any particular, then the one receiving the highest number of affirmative votes shall thereby be adopted, and the other shall be considered rejected.

Seattle City Charter Article IV, Section 1G.

The parties disputed the proper ballot title for the alternative measures. Yes For Early Success asserted that under the City Charter, both measures should be submitted independently to the voters for a majority vote. The City maintained that RCW 29A.36.050(3) specified the proper format when the legislative body has proposed an alternative measure to an initiative.

3

The parties initiated three separate actions. Yes For Early Success raised additional claims, including alleged constitutional violations, claims under 42 U.S.C. § 1983, and violations of the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW.

The trial court consolidated the three actions for consideration at a hearing on August 15, 2014. Following argument, the court entered an order and memorandum opinion concluding that I-107 and Ordinance 124509 both dealt with the same subject, that the general laws of Washington controlled over any conflicting provisions of the City's Charter, and that RCW 29A.36.071 requires the ballot title for an initiative submitted to the local legislative body to conform to the requirements of RCW 29A.72.050(3) when the legislative body has rejected an initiative and proposed an alternative measure addressing the same subject. The court directed the City and King County to use the form of joint ballot title specified in RCW 29A.72.050(3) for I-107 and Ordinance 124509 and dismissed Yes For Early Success's remaining claims with prejudice.

The parties have requested expedited consideration to permit the timely preparation of the November 4, 2014 ballot.

An appellate court reviews questions of statutory interpretation de novo. State v. J.P., 149 Wn.2d 444, 449, 69 P.3d 318 (2003). The goal of statutory interpretation is to ascertain and carry out the legislature's intent. Burns v. City of Seattle, 161 Wn.2d 129, 140, 164 P.3d 475 (2007). This examination necessarily begins with an analysis of the statute's plain language, which "is to be discerned from the ordinary meaning of the language at issue, the context of

the statute in which that provision is found, related provisions, and the statutory scheme as a whole." State v. Engel, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). If, upon review, the statute's plain meaning is unambiguous, the court's inquiry is at an end. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Yes For Early Success contends that it is "clear" that the legislature did not intend to change local initiative law when it "streamlined" the ballot title statutes by having the local ballot title statute refer to RCW 29A.72.050. The plain language of RCW 29A.36.071 and RCW 29A.72.050 belies this claim.

Seattle is a charter city authorized by the Washington Constitution. Article XI, section 10 provides that "cities or towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this Constitution shall be subject to and controlled by general laws." Consequently, "a general statute enacted by the legislature supersedes or modifies provisions of a city charter to the extent that they are in conflict." Oakwood Co. v. Tacoma Mausoleum Ass'n, 22 Wn.2d 692, 695, 157 P.2d 595, adhered to on reh'g, 22 Wn.2d 692, 161 P.2d 193 (1945); see also Mosebar v. Moore, 41 Wn.2d 216, 220, 248 P.2d 385 (1952); Neils v. City of Seattle, 185 Wash. 269, 53 P.2d 848 (1936).

Yes For Early Success does not dispute that RCW 29A.36.071 is a general statute that specifies the ballot title format for local measures "submitted to the voters of a local government." RCW 29A.36.071(1)(c) unambiguously provides, with exceptions not relevant here, that "the ballot title must conform with the requirements and be displayed substantially as provided under RCW

29A.72.050." Because RCW 29A.36.071 expressly incorporates by reference the ballot title provisions of RCW 29A.72.050, "the precepts and terms to which reference is made are to be considered and treated as if they were incorporated into and made a part of the referring act, just as completely as if they had been explicitly written therein." Knowles v. Holly, 82 Wn.2d 694, 700-01, 513 P.2d 18 (1973).

RCW 29A.72.050 is drafted solely in terms of the state "legislature." See also RCW 29A.72.270. Consequently, to accord any meaning to the mandate in RCW 29A.36.071 to follow the ballot form in RCW 29A.72.050, we must construe the term "legislature" in RCW 29A.72.050 to encompass the legislative authority or body of the "local government" as that term is used in RCW 29A.36.071. See Mukilteo Citizens for Simple Gov't v. City of Mukilteo, 174 Wn.2d 41, 49 n.4, 272 P.3d 227 (2012) (Pursuant to RCW 29A.36.071(1), the "ballot title for a local measure, including referenda and any other question submitted to the voters" must conform with the requirements of RCW 29A.72.050).

RCW 29A.72.050(3) specifies the ballot format when there is an initiative to the legislative body for which the legislative body "has proposed an alternative." That is the situation here.

Under the City Charter, initiatives are submitted to the Council, which may adopt the initiative and enact it into law, reject the initiative and present it to the electorate for a vote, or reject the initiative and propose an alternative and submit both measures for a vote. In adopting Ordinance 124509, the Council expressly rejected I-107 and adopted "an alternative measure dealing with the same

6

subject as Initiative 107." In such circumstances, RCW 29A.72.050(3) requires the following ballot format:

> (3) For an initiative to the legislature for which the legislature has proposed an alternative, the ballot title must be displayed on the ballot substantially as follows:
> "Initiative Measure Nos. . . . and . . .B concern (statement of subject).
> Initiative Measure No. . . . would (concise description).
> As an alternative, the legislature has proposed Initiative Measure No. . . .B, which would (concise description).
>
> 1. Should either of these measures be enacted into law?
> Yes  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □
> No  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □
> 2. Regardless of whether you voted yes or no above, if one of these measures is enacted, which one should it be?
> Measure No.  . . . . . . . . . . . . . . . . . . . . . . □
>             or
> Measure No.  . . . . . . . . . . . . . . . . . . . . . . □"

Yes For Early Success maintains that the ballot title statutes and the City Charter can be harmonized by allowing the City to "choose" the ballot title format in RCW 29A.72.050 that "presents I-107 to the voters for an up-or-down majority vote." Yes For Early Success concludes that the City was therefore required to submit both I-107 and Ordinance 124509 to the electorate using the single-measure format of RCW 29A.72.050(2), the only provision of RCW 29A.72.050 permitting an independent majority vote.

Yes For Early Success's arguments would require us to ignore the joint ballot format in RCW 29A.72.050(3) for the analogous situation when the "legislature has proposed an alternative" to an initiative, while imposing the format in RCW 29A.72.050(2), which expressly applies to "an initiative to the legislature for which the legislature has *not* proposed an alternative." Yes For

7

Early Success has not cited any relevant authority that would permit us to rewrite the clear language of a statute in the guise of harmonizing the statute with the City Charter. See Mukilteo Citizens v. City of Mukilteo, 174 Wn.2d at 49 (noting that in a single initiative case, RCW 29A.72.050(2) "provides a ballot title form that local initiatives are to follow").

Yes For Early Success's reliance on RCW 29A.36.071(3) is also misplaced. RCW 29A.36.071(3) provides that the ballot title provisions of subsection (1) do not apply "if another provision of law specifies the ballot title for a specific type of ballot question or proposition." We agree with the City that when read in context, "another provision of law" refers to *statutes* that designate the specific ballot format in a specific context, such as those expressly referred to in subsection (1). Construing RCW 29A.36.071(3) to excuse compliance with ballot title requirements merely because a charter contains general provisions governing initiatives would effectively render RCW 29A.36.071(1) meaningless.

The trial court did not err in directing the City and King County to use the two-part joint ballot format in RCW 29A.72.050(3).

Yes For Early Success contends that the trial court erred when it granted the City injunctive relief beyond the scope permitted under CR 60(b). But the trial court's decision was based on three consolidated actions involving Yes For Early Success's challenge to the ballot title. Yes For Early Success has failed to demonstrate that the trial court erred in granting injunctive relief given the nature and scope of the three consolidated actions.

8

Yes For Early Success contends that the trial court erred in "upholding" the City's determination that I-107 and Ordinance 124509 conflict in certain particulars. But the trial court entered no such decision. To resolve the ballot dispute before it, the trial court determined only that the Council rejected I-107 and proposed an alternative measure on the same subject. No more was required.

Yes For Early Success maintains that the Council's declaration in Resolution 31530 that I-107 and Ordinance 124509 "conflict in several particulars" should be declared void as an ultra vires act because a court of law must determine—after an election—whether the measures "be conflicting in any particular." Seattle City Charter Article IV, Section 1G. Yes For Early Success claims that the declaration undermined its campaign by changing the nature of the debate and discouraging I-107 endorsements.

The Council's recognition of the existence of some conflict was an inherent part of its decision to develop an "alternative" measure instead of enacting I-107. The decision to reject I-107 and propose an alternative measure, which Yes For Early Success does not challenge, necessarily resulted in the submission of the measures to voters in the format that RCW 29A.72.050(3) mandates. At that point, the City Charter provisions addressing the postelection resolution of conflicts became irrelevant. Yes For Early Success fails to establish any basis for declaring the Council's statement void.

Yes For Early Success contends that the trial court erred in dismissing its claims under 42 U.S.C. § 1983 and its claim for violation of OPMA. Yes For Early Success has neither identified the nature of its federal claims nor explained how they survived the trial court's resolution of the ballot title dispute.

In support of its OPMA claim, Yes For Early Success alleges that the City made its determination that I-107 and Ordinance 124509 conflict during an improper executive session. The allegation of an OPMA violation clearly rests on Yes For Early Success's assumption that the City Charter provisions govern the ballot format. As already indicated, those provisions became irrelevant once the Council rejected I-107 and submitted an alternative measure on the same subject. No conflict is possible since only one version may be approved by the voters. The trial court did not err in dismissing the section 1983 and OPMA claims.

Finally, Yes For Early Success asserts that the joint ballot format deprives the voters of various constitutional rights, including their voting and initiative rights, and that the ballot format will create future uncertainty. Although the precise nature of the claimed errors is unclear, they appear to involve primarily rights that allegedly arise out of the City Charter that the Washington Constitution authorized. But the Constitution expressly provides that city charters are subject to general laws that may alter or supersede charter provisions without violating the Constitution. Yes For Early Success fails to identify any reversible error.

Affirmed.

No. 72322-7-I/11

WE CONCUR:

Trickey, J

Becker, J.

Appelwick, J