[Nos. 27046-0-I; 27696-4-I. Division One. August 3, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. STONEY TERRELL LANDRUM, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. JOHN JOSEPH KEATING, JR., *Appellant.*

*Adam Shapiro* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

AGID, J. — The appellants, John Joseph Keating and Stoney Terrell Landrum, raise the issue of whether the Juvenile Justice Act of 1977 (JJA), RCW 13.40, authorizes the juvenile court to impose restitution for the costs of psychological counseling incurred by the victims of the defend-ants' criminal assaults. In addition, Landrum challenges the trial court's order of restitution for the victim's medical examination and its imposition of a sentence including 6 months of community supervision, 36 hours of community service, and restitution.

## I
### FACTS
### Keating

The State charged Keating with child molestation in the first degree. The original information stated that, during the period of December 1, 1988, to April 30, 1989, the

defendant had sexual contact with the victim, P. Keating entered an *Alford*[1] plea to assault in the fourth degree.[2] As part of this plea, he agreed to allow the juvenile court to review the police reports. It is undisputed that the police reports indicate that the assault was of a sexual nature.[3] At sentencing, the trial court ordered the defendant to pay restitution in the amount of $325 for the victim's counseling costs, on a payment schedule of $20 per month.

## Landrum

Landrum was also charged with one count of first degree child molestation. The information alleged that on July 4, 1989, Landrum had sexual contact with the victim, M. Landrum also entered an *Alford* plea to assault in the fourth degree. In the plea agreement, he authorized the juvenile court to make a factual finding based on the police incident report. The police report indicated that M. told her mother that Landrum had exposed himself, made her touch his penis and, when M. refused to do more, put her in the shower and turned on the hot water. At a restitution hearing, the juvenile court ordered restitution in the amount of $892 for the victim's counseling expenses and $16 for a medical examination of the victim's hymen. The court established a payment schedule of $10 per month.

## II
### DISCUSSION
### Restitution for Counseling Costs

■ ■ Under RCW 13.40.190, the court is required to impose on a juvenile offender restitution for losses suffered by the victim.[4] *State v. Bennett*, 63 Wn. App. 530, 532, 821

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

[2] The State accordingly amended the information to charge assault in the fourth degree.

[3] The police reports were apparently part of the juvenile court record. However, they were not designated as part of the appellate record.

[4] However, if the juvenile lacks the ability to pay, the court may not impose restitution. RCW 13.40.190(1); *State v. Fellers*, 37 Wn. App. 613, 620, 683 P.2d

P.2d 499 (1991). Our review of the restitution order is limited to determining whether the restitution ordered by the trial court was authorized by statute. *State v. Horner*, 53 Wn. App. 806, 807, 770 P.2d 1056 (1989); *State v. Morse*, 45 Wn. App. 197, 199, 723 P.2d 1209 (1986). In reviewing the restitution provisions of the JJA, we are mindful that they are to be liberally construed in favor of imposing restitution. *State v. Barrett*, 54 Wn. App. 178, 179, 773 P.2d 420 (1989); *State v. Vinyard*, 50 Wn. App. 888, 895, 751 P.2d 339 (1988).

The appellants contend that the juvenile court lacked authority to impose restitution for the victims' counseling expenses. This issue arises because the statutory section governing dispositional orders (disposition section) provides for restitution of counseling expenses while, at the time the defendants committed their crimes, the statutory definition of restitution (definition section) did not.[5]

The disposition section, RCW 13.40.190(1), provides in part:

> (1) *In its dispositional order, the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent.* In addition, restitution may be ordered for loss or damage if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which, pursuant to a plea agreement, are not prosecuted. The payment of restitution shall be in addition to any punishment which is imposed pursuant to the other provisions of this chapter. The court may determine the amount, terms, and conditions of the restitution. *Restitution may include the costs of counseling reasonably related to the offense.*

(Italics ours.)

"Restitution" is defined in former RCW 13.40.020(17) as follows:

---

209 (1984). Neither appellant argues that he lacks the ability to pay the court imposed restitution.

[5]Effective July 1, 1990, the definition of "restitution" was amended to include the "costs of the victim's counseling reasonably related to the offense if the offense is a sex offense." RCW 13.40.020(17). Because the definition had not yet been amended at the time the defendants committed their crimes, the amendment does not resolve the statutory conflict at issue here.

> "Restitution" means financial reimbursement by the offender to the victim, and shall be limited to easily ascertainable damages for injury to or loss of property, actual expenses incurred for medical treatment for physical injury to persons, and lost wages resulting from physical injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses. Nothing in this chapter shall limit or replace civil remedies or defenses available to the victim or offender[.]

Landrum urges us to reconcile this conflict by interpreting the language allowing restitution for counseling costs in the disposition section to mean only those counseling costs that result from a physical injury.[6] We cannot adopt this interpretation.

■■■■ The pre-1990 definition section neither provides for nor excludes restitution for counseling expenses. Definitions are often general in nature and do not necessarily include every aspect of the term as it is later used in the substantive provisions of a statute. When two statutes apparently conflict, the rules of statutory construction direct the court to, if possible, reconcile them so as to give effect to each provision. *In re King*, 110 Wn.2d 793, 799, 756 P.2d 1303 (1988); *In re Mayner*, 107 Wn.2d 512, 522, 730 P.2d 1321 (1986). Further, the statutory provision that appears latest in order of position prevails unless the first provision is more clear and explicit than the last. *State ex rel. Graham v. San Juan Cy.*, 102 Wn.2d 311, 320, 686 P.2d 1073 (1984). Another statement of this rule appears in *Chelan Cy. Deputy Sheriffs' Ass'n v. Chelan Cy.*, 45 Wn. App. 812, 822, 725 P.2d 1001 (1986), *rev'd on other grounds*, 109 Wn.2d 282, 745 P.2d 1 (1987): "where a statute expresses first a general intent and afterwards an inconsistent particular intent, such particular intent will be taken as an exception from the general intent and both will stand." In addition, when two statutory provisions dealing with the same subject matter are in conflict, the latest enacted provision prevails when it is more specific than its predecessor. *Citizens*

---

[6]For example, he argues, the restitution provisions would allow restitution for job counseling for victims who have suffered a physical injury which prevents them from resuming their previously held position.

*for Clean Air v. Spokane*, 114 Wn.2d 20, 37, 785 P.2d 447 (1990); *State v. Becker*, 59 Wn. App. 848, 852-53, 801 P.2d 1015 (1990). Here, the disposition provision which allows restitution for counseling appears latest in order of position and is clear and specific as to counseling. Further, that section was amended to add the sentence providing for counseling costs after the definition section was enacted. Accordingly, the provision for counseling expenses should be given effect as an expansion of the definition.

■ Moreover, statutes should be construed to effect the legislative purpose and to avoid unlikely, strained or absurd results. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990); *State v. Curwood*, 50 Wn. App. 228, 231, 748 P.2d 237 (1987). Two basic goals of the JJA and its restitution provisions are to make juveniles accountable for their actions and to provide restitution to crime victims. RCW 13.40.010(2)(c), (h); *Bennett*, 63 Wn. App. at 533; *State v. Bush*, 34 Wn. App. 121, 124, 659 P.2d 1127, *review denied*, 99 Wn.2d 1017 (1983). Because the psychological damage to the child sexual abuse victim may last a lifetime, counseling for these victims is now commonly recognized as an essential part of the recovery process.[7] Landrum's suggested construction would frustrate the overall purposes of the JJA by allowing the defendants to escape responsibility for the results of their actions and leaving the victims without compensation for their injuries.[8] This construction would also render the counseling provision practically meaningless by restricting it to a narrow and unusual class of cases.

Keating makes a related argument, contending that counseling costs are an "intangible loss" and thus expressly excluded under the definition of restitution. He therefore argues that the counseling provision of the disposition section

---

[7]*See* Task Force on Community Protection, *Final Report* I-2 (1989) ("The long term trauma associated with sexual assault is beginning to be understood by our society.").

[8]While we recognize that a civil suit for damages could be pursued by the victims here, such a remedy would be impractical and unnecessarily costly given the relatively small amount of restitution ordered.

is in irreconcilable conflict with the definition section and the conflict must be resolved in favor of the defendant under the rule of lenity.

██ As examples of "intangible losses", the statute lists "mental anguish, pain and suffering". RCW 13.40.020(17). Clearly, these are intangible in that they are not capable of being quantified with exactness. Compensation of the victim for these types of losses requires the judgment and discretion of the factfinder to determine an appropriate award. By contrast, counseling costs are more akin to medical bills. They are easily quantified by reference to the provider's bill and they represent expenses actually incurred. Thus, counseling costs fall within the category of "easily ascertainable damages" and "actual expenses incurred for medical treatment", RCW 13.40.020(17), and cannot be classified as an "intangible" loss.

 In addition, we reject the appellant's argument that the rule of lenity should apply to our analysis of a restitution issue. The rule of lenity is applied to ambiguous criminal statutes to prevent an "increase [in] the *penalty* imposed absent clear evidence of legislative intent to do so." (Italics ours.) *State v. Sass*, 94 Wn.2d 721, 726, 620 P.2d 79 (1980). As we noted above, the legislative intent to permit restitution for counseling costs is clear under all the applicable rules of statutory construction. *See State v. Rhodes*, 58 Wn. App. 913, 915-16, 795 P.2d 724 (1990). In addition, the underlying purposes of the JJA's restitution provisions are to compensate the victim and make the defendant accountable for his criminal actions. *Bennett*, 63 Wn. App. at 533. Restitution does not increase the defendant's time in jail or on supervision and does not restrict the defendant's freedom. Thus, the primary purpose of restitution provisions is not penal. We hold that the rule of lenity does not apply and that general rules of statutory construction control.

Keating argues that the 1990 amendment to the section defining restitution, RCW 13.40.020(17), demonstrates the Legislature's intent to limit restitution to sex offense cases.[9]

---

[9]The 1990 amendment was part of the community protection act, which originated in Second Substitute Senate Bill 6259, 51st Legislature (1990). This

However, this argument must fail because, even if he were correct and the amendment were construed to limit restitution for counseling to victims of sex crimes, it creates no conflict in these cases because these were clearly sex offenses. Thus, whether such a limitation was intended is not before us here.[10]

 Keating's assertion that the counseling for sexual assault was not reasonably related to the charged offense of fourth degree assault lacks merit. A trial court may impose restitution if the damage or injury was a foreseeable consequence of the defendant's criminal acts. *State v. Harrington*, 56 Wn. App. 176, 179, 782 P.2d 1101 (1989). A causal connection must exist between the charged crime and the victim's damages. If, but for the criminal acts of the defendant, the victim would not have suffered the damages for which restitution is sought, a sufficient causal connection exists. *State v. Blair*, 56 Wn. App. 209, 214-16, 783 P.2d 102 (1989); *Barrett*, 54 Wn. App. at 179.

In determining whether a causal connection exists, we look to the underlying facts of the charged offense, not the name of the crime to which the defendant entered a plea. *See Harrington*, 56 Wn. App. at 179-80; *State v. Selland*, 54 Wn. App. 122, 124, 772 P.2d 534 (holding that the juvenile court is not limited by the definition of the crime of which the defendant was convicted in ordering restitution), *review denied*, 113 Wn.2d 1011 (1989); *State v. Steward*, 52 Wn.

---

bill resulted from work done by the Governor's Task Force on Community Protection (Task Force). *1990 Final Legislative Report*, Regular and First Special Sessions, 51st Legislature, 2SSB 6259, at 142 (1990). In an effort to determine the major flaws in our state's laws regarding sexual offenders, the Task Force conducted public hearings, reviewed research on sex offenders, examined other state policies, and studied profiles of violent offenders. Task Force on Community Protection, *Final Report* I-1 (1989). In its *Final Report*, the Task Force recognized that victims' "recovery from the trauma of sexual assault can be greatly enhanced by support from trained counselors." *Final Report*, at II-24. It appears that the 1990 amendment was designed to assure that this recommendation was implemented. The focus of the act was on sex offenses, not on restitution in general.

[10]We note that, by adopting the 1990 amendment, the Legislature created yet another ambiguity in the JJA by arguably limiting its grant of authority to impose restitution for counseling to sex offense cases.

App. 413, 760 P.2d 939 (1988) (restitution order for damage to car and stolen contents was proper where the subsequent theft was foreseeable consequence of defendant's taking and abandoning car, even though defendant was charged only with taking a motor vehicle and not with theft).

Here, it is undisputed that each defendant committed an unlawful touching of a sexual nature. Thus, the facts underlying the charged offense establish that a sexual assault occurred. As in *Selland*, *Harrington*, and *Steward*, the juvenile court was not precluded from imposing restitution for damages caused by the defendants' criminal acts simply because the prosecutor could have proceeded to trial on the greater offense or charged additional offenses on the basis of the facts alleged. It was foreseeable that each defendant's criminal act, an assault of a sexual nature, would lead to psychological injuries requiring sexual assault counseling. The juvenile court properly found that the counseling was reasonably related to the charged offense.[11]

### Restitution for Victim's Medical Examination

Landrum also challenges the trial court's restitution order for the costs of a medical examination of M.'s hymen. Landrum contends that this medical examination was neither reasonably foreseeable nor causally related to the victim's injuries because the police report contained no allegation of vaginal touching. While it is true that there were no allegations of vaginal touching, it is undisputed that the assault was sexual in nature. The question is whether a complete medical examination of the victim was reasonably foreseeable given the victim's allegation of sexual contact.

The defendant argues that allowing restitution for the medical examination would permit punishment for uncharged crimes, citing *State v. Hartwell*, 38 Wn. App. 135, 684 P.2d

---

[11]Keating's other argument, that restitution is only appropriate when the charged crime results in substantial bodily harm, also lacks merit. Not only is there no authority for this proposition, but an assault of the type that was perpetrated here can result in more serious and permanent psychological damage than a purely physical injury. Further, the defendant's narrow focus on physical injury is misplaced. At issue here is whether the victim's counseling was reasonably related to the defendant's criminal acts. This inquiry necessarily contemplates psychological rather than physical injury.

778 (1984) and *State v. Ashley*, 40 Wn. App. 877, 700 P.2d 1207 (1985). Both cases are distinguishable. In *Hartwell*, the defendant entered a guilty plea to a charge of leaving the scene of an accident and was ordered to pay restitution for the damages incurred by the injured parties. However, he had not been charged with negligent driving, driving while intoxicated, or any other crime that was related to or caused the accident victims' damages. Because there was no basis for the trial court's conclusion that Hartwell's unlawful act — leaving the accident scene — caused the accident victims' damages, the court reversed the restitution order. *Hartwell*, 38 Wn. App. at 140-41. In *Ashley*, the trial court had ordered the defendant to pay restitution for the loss and injuries suffered by the victim in an uncharged assault. *Ashley*, 40 Wn. App. at 878-79. Here, by contrast, the defendant was not ordered to pay restitution for damages resulting from an uncharged offense.

 In this case, the victim's mother was justified in having M.'s hymen examined as a result of her report of sexual contact. As our cases and expert testimony have recognized, child victims of sexual assault often delay in disclosing all or part of the abuse. *State v. Petrich*, 101 Wn.2d 566, 573-76, 683 P.2d 173 (1984); *State v. Graham*, 59 Wn. App. 418, 422-25, 798 P.2d 314 (1990); *State v. Jackson*, 42 Wn. App. 393, 394-95, 711 P.2d 1086 (1985). It is therefore appropriate that a parent, uncertain as to the nature and extent of the assault, have his or her child examined to determine whether the child has been physically injured. A medical examination was a foreseeable consequence of the assault since, but for the assault, M. would not have needed the medical examination at all. A sufficient causal connection exists between the sexual assault and the restitution ordered. *Blair*, 56 Wn. App. at 214-16; *Barrett*, 54 Wn. App. at 179. The trial court did not abuse its discretion in ordering the defendant to pay $16 in restitution for the cost of the examination.

Appealability of Landrum's Option B Sentence

 At Landrum's disposition hearing, the juvenile court imposed a disposition including 6 months of community

supervision, 36 hours of community service, and restitution.[12] No confinement was ordered. Landrum contends that the sentence must be reversed on the ground that the trial judge failed to give reasons on the record to support the sentence.

Former RCW 13.40.160(2) provides in relevant part:

> Where the respondent is found to be a minor or first offender, the court shall order that the respondent serve a term of *community supervision*. . . . A disposition other than a community supervision may be imposed only after the court enters reasons upon which it bases its conclusions that imposition of community supervision would effectuate a manifest injustice. . . .
>
> Any disposition *other than community supervision* may be appealed as provided in RCW 13.40.230, as now or hereafter amended, by the state or the respondent. *A disposition of community supervision may not be appealed under RCW 13.40.230 as now or hereafter amended.*

(Italics ours.) The express terms of the statute preclude the defendant from appealing his community supervision disposition. In addition, RCW 13.40.230 governs appeals from "[d]ispositions reviewed pursuant to RCW 13.40.160". RCW 13.40.230(1). Subsection (2) states what the reviewing court must find in order to uphold a disposition outside the standard range or one which imposes confinement for a minor or first offender. RCW 13.40.230(2).[13] No mention is made of appeals from a community supervision or standard range disposition. Thus, by implication, the language of RCW 13.40-

---

[12]Although Landrum characterized this as an option B sentence, that version of RCW 13.40.160(2) was not yet in effect at the time he committed his crime. Laws of 1989, ch. 407, § 4, p. 2189.

[13]RCW 13.40.230(2) provides:

"To uphold *a disposition outside the standard range, or which imposes confinement* for a minor or first offender, the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range, or nonconfinement for a minor or first offender, would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient." (Italics ours.)

.230 also indicates that community supervision sentences are not appealable. Under the statutory scheme, Landrum cannot appeal his sentence unless it includes confinement or is a sentence outside the standard range.[14] We therefore dismiss this portion of Landrum's appeal.

In summary, we hold that the JJA authorizes the trial court to impose restitution for counseling costs incurred by victims of sexual assault. If, as in these cases, the underlying facts allege an assault of a sexual nature, such costs are reasonably related to the offense regardless of whether the defendant ultimately pleads guilty to a lesser offense. We further hold that the trial court properly ordered Landrum to pay for the victim's medical examination. Finally, the statutory scheme does not permit appeals from sentences imposing community supervision.

The judgments are affirmed.

GROSSE, C.J., and KENNEDY, J., concur.

---

[14]Nor was the trial court required to make findings or provide reasons on the record to support its disposition. *See State v. Strong*, 23 Wn. App. 789, 792, 599 P.2d 20 (1979) ("a disposition within the standard range requires no explanation").