FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2017 OCT 23 AM 9: 00

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 75707-5-I |
| | ) | |
| D.V., | ) | DIVISION ONE |
| | ) | |
| Appellant. | ) | PUBLISHED OPINION |
| | ) | |
| | ) | FILED: October 23, 2017 |
| | ) | |

APPELWICK, J. — The trial court committed D.V. for 14 days after determining that he presented a likelihood of serious harm to others due to a mental disorder. D.V. argues that the trial court misinterpreted the relevant statute. He argues that statutory language of RCW 71.05.020(27)(a)(ii) requires that the person threatened with harm must actually be in fear of such harm. We reverse.

## FACTS

D.V. posted comments on Facebook that threatened his soon-to-be ex-wife and her boyfriend. Fairfax Hospital petitioned to have him involuntarily committed for 14 days. The State presented one witness, Dr. Lugo-Steidel, a clinical psychologist at the hospital who evaluated D.V. He testified that D.V. suffered from bipolar disorder and presented a danger to others as a result. He further testified that D.V. acknowledged that he had threatened harm to his ex-wife and her boyfriend, and that he was fearful that D.V. would in fact harm them.[1]

---

[1] The expert also testified that members of his hospital's staff were in fear of harm to themselves. But, D.V. objected on hearsay grounds, and the State told the trial court that it was not offering statements by hospital staff as substantive evidence, but only for the basis of the expert's opinion.

After the State rested its case, D.V. moved to dismiss on the grounds that the State failed to present evidence that anyone was personally in fear of harm. The trial court denied this motion. D.V. testified in his own behalf.

The trial court concluded that the State had shown probable cause that D.V., as a result of his mental disorder, presented a likelihood of serious harm to others. It entered a 14 day order of commitment. D.V. appeals.

## DISCUSSION

D.V. makes a single argument: his commitment was erroneous because the trial court misinterpreted the definition of "likelihood of serious harm" found in RCW 71.05.020(27).

This presents a question of statutory construction. The purpose of statutory interpretation is to determine and give effect to the intent of the legislature. State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). Legislative intent is first determined by looking at the language of the statute. State v. Hansen, 122 Wn.2d 712, 717, 862 P.2d 117 (1993). When statutory language is unambiguous, "legislative intent is apparent, and we will not construe the statute otherwise." State v. J.P., 149 Wn.2d 444, 450, 69 P.3d 318 (2003). Because the involuntary treatment act[2] impacts liberty interests, it must be strictly construed. In re Det. of D.W., 181 Wn.2d 201, 207, 332 P.3d 423 (2014).

A court shall order a person be detained for involuntary treatment if it finds by a preponderance of the evidence that that person, as a result of a mental

---

[2] Chapter 71.05 RCW.

disorder, presents a likelihood of serious harm. RCW 71.05.240(3)(a). A "likelihood of serious harm" is defined as:

> (a) A substantial risk that: (i) Physical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself; (ii) physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm; or (iii) physical harm will be inflicted by a person upon the property of others, as evidenced by behavior which has caused substantial loss or damage to the property of others; or
>
> (b) The person has threatened the physical safety of another and has a history of one or more violent acts.

RCW 71.05.020(27).

The definition of "likelihood of serious harm" addresses harm to self, others, and property. See RCW 71.05.020(27). Under every option in the definition, risk of harm must be evidenced by a corroborating factor. Id. Only in the case of harm to oneself is a mere threat enumerated as evidencing the substantial risk of harm. Id. at (a)(i).

A substantial risk of harm to others, which is at issue here, can be established by three types of behavior: under (b), by threatening the physical safety of another and having a history of one or more violent acts; under (a)(ii) by either having caused such harm or by placing a person in reasonable fear of sustaining such harm. No evidence was presented that D.V. had a history of one or more violent acts. Nor was there evidence that D.V. had previously caused harm to the persons he is accused of threatening here. His commitment could not be lawfully based on either of those options.

3

Thus the trial court must have relied on the only remaining option: "a substantial risk that: . . . (ii) physical harm will be inflicted by a person upon another, as evidenced by behavior . . . which places another person or persons in reasonable fear of sustaining such harm." RCW 71.05.020(27)(a)(ii). Behavior encompasses words as well as actions. The statute clearly and unambiguously requires that the person threatened be in fear, that they must be in fear of harm to themselves, and that the harm they are fearful of must be in the nature of the harm threatened. Under the plain language, threats against another person alone do not satisfy the statute. We will not read such an option into the statute.

It is uncontroverted that the only individuals threatened by D.V. were his ex-wife and her boyfriend. But, they did not testify. The State's only witness, Dr. Lugo-Steidel, testified that he feared that D.V. would harm his ex-wife and her boyfriend. The doctor's personal belief or fear cannot establish a likelihood of serious harm as it is defined in the statute. The State failed to present evidence that either individual to whom the behavior (threat) was directed was personally in fear that he or she would be harmed in the manner threatened. Therefore, no evidence supports the last available option under the definition of "likelihood of serious harm." The order of commitment must be vacated.

The State analogizes to the intimidating a judge statute, RCW 9A.72.160. That statute criminalizes instances where someone "directs a threat to a judge." Id. In Hansen, the court interpreted RCW 9A.72.160's use of the term "threat" as a "communication made directly or indirectly," and held that the threat need not actually be communicated to the judge. 122 Wn.2d at 717-18.

The State argues that we should apply a similarly expansive definition here. But, this argument ignores the difference in the plain language of the statutes. The commitment statute refers to conduct that "places" a person in reasonable fear of "such harm." RCW 71.05.020(27)(a)(ii). The intimidating a judge statute speaks in completely different terms. It criminalizes the act of making a threat. It does not depend on a person's fear of harm. Because it addresses different statutory language, Hansen is not helpful in interpreting RCW 71.05.020(27)(a)(ii) which must be strictly construed.

The State was required to prove D.V. presented a likelihood of serious harm as defined in RCW 71.05.020(27). It did not.

We reverse.

WE CONCUR: